UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN          C L O S E D
SOUTHERN DIVISION


JAMES EDWARD CARRODINE, #241113,

               Petitioner,

v.                                                            CASE NO. 08-CV-11718
                                                              HONORABLE ANNA DIGGS TAYLOR

KENNETH MCKEE,

               Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

James Edward Carrodine ("Petitioner"), a Michigan prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of assault with intent to murder, Mich. Comp. L. § 750.83, carrying a concealed weapon, Mich. Comp. L. § 750.227, and possession of a firearm during the commission of a felony, Mich. Comp. L. § 750.227b, following a jury trial in the Genesee County Circuit Court in 2004. He was sentenced to 20 to 45 years imprisonment on the assault conviction, a concurrent term of two and one-half to five years imprisonment on the concealed weapon conviction, and a consecutive term of two years imprisonment on the felony firearm conviction. In his pleadings, he raises claims concerning the effectiveness of trial counsel. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus and denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

1

## I.  Facts and Procedural History

Petitioner's convictions arise from the shooting of a man named Johnny Davis in a residential area in Flint, Michigan on June 17, 2004.  The Michigan Court of Appeals set forth the underlying facts of the crime, which are presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

> Carrodine's convictions stem from the shooting of 33-year-old Johnny Davis at approximately 3:00 a.m. on June 17, 2004, on Prospect Street in the city of Flint. Davis testified that, at approximately 12:00 or 1:00 a.m., he had been drinking beer with a man named "Snoop" on the porch of Snoop's house on Prospect. Another man, whom Davis knew as "Mr. Block," was sitting in his van in a driveway listening to his radio. Davis testified that, at some point after Snoop went into the house, Mr. Block exited his van. Davis claims that he approached Mr. Block and that, essentially without provocation, Mr. Block shot Davis with a handgun three times.
>
> Davis testified that he knew that Mr. Block had a "problem" with Snoop and another man, James Marcus White, or "Marcus." Davis wanted to speak with Mr. Block alone because Davis was "hoping [Mr. Block] didn't feel like [Davis] was part of this problem." Davis walked over to Mr. Block and asked him "what time it was." "[T]he next thing [Davis] kn[e]w [Mr. Block] shot [him] in the neck." Davis thought that Mr. Block shot him two more times. The bullet that entered his neck pierced his lung, causing complete collapse of the lung, and lodged near his heart. His small and large intestines were also damaged from a gunshot wound or wounds to his stomach. Davis denied knowing anyone named "James Carrodine," but in court he identified Carrodine as the person he knew as "Mr. Block." Defense counsel argued that Carrodine acted in self-defense because he reasonably believed that Davis was about to attack him with a machete.

*People v. Carrodine*, No. 259899, 2006 WL 1751857, *1 (Mich. Ct. App. June 27, 2006) (unpublished).  At the close of trial, the jury convicted Petitioner of the charged offenses and sentenced him as previously set forth.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the same ineffective assistance of counsel claims contained in the present

petition, as well as a claim challenging his sentence.  The Michigan Court of Appeals affirmed his convictions and sentence, and remanded the case for a correction of the judgment of sentence.  *See People v. Carrodine*, No. 259899, 2006 WL 1751857 (Mich. Ct. App. June 27, 2006) (unpublished).  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *See People v. Carrodine*, 477 Mich. 1110, 729 N.W.2d 883 (2007).

Petitioner thereafter filed the present petition for a writ of habeas corpus asserting the following claims as grounds for relief:

> I.    He was denied the effective assistance of counsel because counsel did not object when the office who was at his 3 ½ hour videotaped interrogation presented her own editorialized version of the statement rather than the actual statement itself.
>
> II.   Trial counsel's concessions of his guilt of carrying a concealed weapon constituted ineffective assistance denying him a fair trial.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit.  Petitioner has not filed a reply to that answer.

## II.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable

3

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require

4

citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  Analysis

Petitioner asserts that he is entitled to habeas relief because defense counsel was ineffective for failing to object to the interrogating police officer's testimony concerning Petitioner's videotaped interrogation and resulting statement and because defense counsel was ineffective for conceding Petitioner's guilt on the carrying a concealed weapon charge. Respondent contends that both of these claims lack merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must  prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must

have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Petitioner first asserts that counsel was ineffective for failing to object to Sergeant Jennifer Besson's testimony concerning Petitioner's videotaped interrogation and resulting statement.  The Michigan Court of Appeals described the situation as follows:

> Sergeant Besson participated in a videotaped interview of Carrodine that occurred after his arrest. The video was offered as a confession to the shooting but, because of its poor quality, long portions of it were apparently indecipherable. Accordingly, defense counsel, who had viewed the video twice in the presence of both Sergeant Besson and the prosecutor, agreed to allow Sergeant Besson to testify from her memory and notes regarding the content of the portions of the video that were difficult to understand. Carrodine argues that Sergeant Besson's testimony consisted of a grossly misstated, editorialized

version of his statement to police and, therefore, that her testimony was largely inadmissible and highly prejudicial.

*Carrodine*, 2006 WL 1751857 at *1.  Citing the *Strickland* standard and state cases implementing that standard, the Michigan Court of Appeals then went on to deny relief on this claim reasoning:

> Carrodine primarily argues that large portions of Sergeant Besson's testimony were inadmissible, citing *People v. McGillen # 1*, [392 Mich 251; 220 NW2d 677 (1974)]. However, Carrodine misapplies the *McGillen* Court's general statement that "[i]t is only the Defendant's statements that may be admissible against him, not the arresting officer's editorialized version of them."  In *McGillen*, a testifying police officer purported to restate an incriminating answer given by the defendant during an interview with the officer; the officer characterized the statement as a definite, direct answer to a direct question. The officer later admitted that the defendant's actual answer was unresponsive and in need of explanation. The Court concluded that the officer's testimony may have been "nothing more" than a "repeated paraphrase of the entire conversation." Significantly, the Court found that the paraphrased statements were inadmissible both because of the officer's lack of candor with the Court and because of his deliberate attempt to bypass the defendant's *Miranda* rights.
>
> This Court later recognized the limits of *McGillen* in *People v. Stander*, [73 Mich App 617; 251 NW2d 258 (1976)] and *People v. Eccles*, [141 Mich App 523; 367 NW2d 355 (1984)].  Both cases noted that the *McGille*n holding rested, at least in part, on the Court's conclusion that there had been *Miranda* violations. The *Eccles* Court also opined that the officer's deliberate testimony to an edited version of the defendant's statements went only to the question of the officer's credibility. Most significantly, the *Eccles* Court explicitly rejected the defendant's argument that paraphrased accounts of a statement are inadmissible because they are necessarily different from a defendant's exact statement. Such a rule, this Court explained, would overlook "the safeguards already present in our justice system to filter out inaccurate or exaggerated testimony such as cross-examination and impeachment."
>
> Crucially, Carrodine does not explicitly challenge Sergeant Besson's testimony regarding what he actually said during his statement. He also does not specifically argue that the video did not contain what essentially appeared to be a confession to the shooting. Rather, he contends that Sergeant Besson should have confined her testimony to his actual statements, and he concedes that if she had her testimony would not have been objectionable. Carrodine also concedes that the central issue in the case remains whether he specifically intended to kill

Davis or, instead, was acting in self-defense.

We group Carrodine's challenges to Sergeant Besson's testimony into two categories. First, he contests instances when Sergeant Besson was permitted to interpret Carrodine's actual statements after unclear portions of the video had been played for the jury and in which she appears to have difficulty accurately recounting the contents of the video. For instance, Carrodine cites portions of the following testimony, when the prosecutor was questioning Sergeant Besson:

A. [Carrodine] also stated, he said I told you so, and he used the N word there.

\* \* \*

[DEFENSE COUNSEL]: You mentioned a moment ago, he says I told you so. Wasn't that Snoop saying I told you so, N -----? ... Snoop is saying I told you so there.

A. I remember, at the beginning of that, he did say yes, afterwards Snoop said I told you so, so if he was repeating that, then that would be Snoop that said that.

\* \* \*

A. I didn't catch that. I'm sorry. It's hard to write the notes and-

[The video is played.]

Q. I can't hear it from here. I'm sorry. Did he say kids?

A. I heard something about kids, but-

[DEFENSE COUNSEL]: He didn't know what to do, except for his baby and his kids.

[The video is played.]

Q. What did he say about a next of? What was that all about?

A. I'm sorry. I'm not catching every line here. I know if I asked you to turn it up, it's just going to make the static worse. He's talking here a little about his kids, and his kids are with him, and he doesn't want to mess up because of the kids.

This testimony does not constitute a deliberate attempt to mischaracterize Carrodine's statements. Moreover, the jury was able to directly observe the contents of the video and compare the contents to Sergeant Besson's interpretation. Defense counsel also appears to have appropriately questioned and corrected Sergeant Besson when he detected inaccuracies. Accordingly, we

cannot agree with Carrodine's characterization of Sergeant Besson's statements as inadmissible "false testimony." Rather, her testimony and attempts to remember the interview presented defense counsel with material for cross-examination and clarification.

Second, Carrodine challenges instances in which Sergeant Besson appears to comment on his guilt by testifying about her assumptions that he committed the shooting or about his state of mind during the interview. Sergeant Besson admitted that she based her interviewing strategy on the assumption that Carrodine was the shooter. At trial, the prosecutor asked several times during the playing of the video whether Carrodine had admitted to performing the shooting "yet." Sergeant Besson responded by saying, "no," by saying that Carrodine responded "like this was new information for him," and by explaining that "he doesn't want to admit that he shot him," and that "he still doesn't offer a reason for why this happened." Sergeant Besson also characterized Carrodine's initial responses as "[b]asically a denial," and, at one point early in the interview, for instance, she explained: "he's just not really got an answer for tonight. He's just making the motion with his hand."

Again, such testimony is not a mischaracterization of Carrodine's actual statements. Rather, it was clear from the context of the testimony that Sergeant Besson was adding her own assumptions about Carrodine not "wanting" to admit to the shooting. Sergeant Besson admitted that, during such interviews, "[w]e like to make it seem as though we already know everything that happened, so what they're telling us won't seem new to us." She explained that she and the other interviewing officer intentionally "minimiz[ed] what's happened and offer[ed Carrodine] an out" to gain a confession. Contrary to Carrodine's argument on appeal, this again is not "false testimony" requiring reversal.

Sergeant Besson's testimony may have presented technical grounds for objection by defense counsel. For instance, counsel was not precluded from arguing that Sergeant Besson's uncertain interpretations of the unclear portions of the video were confusing or misleading. In addition, counsel may have argued that Sergeant Besson did not have personal knowledge of the shooting or of Carrodine's state of mind and, therefore, of whether he could be said not to "want" to confess. However, in light of the context of her testimony, we cannot conclude that counsel's decision not to object on these grounds constituted ineffective assistance. Rather, Sergeant Besson's testimony appeared to aid counsel's trial strategy.

As Carrodine concedes, his primary defense to the assault with intent to murder charge was that he acted in self-defense. In support of this defense, Carrodine relied on the videotaped statement as evidence to argue that he was reasonably defending himself from Davis. Davis allegedly approached Carrodine in the dark

9

when he was alone, and he either saw that Davis had a machete or reasonably assumed that Davis had a machete because he had seen Davis carrying one earlier that day.

Accordingly, defense counsel did not object to the introduction of the video but instead attempted to minimize its negative impact. For instance, counsel noted that, "of course," a person will initially "minimize" his acts in such a situation. In both his opening and closing statements, he also explicitly referred to the high-pressure tactics that the officers admittedly used to coax Carrodine to confess. He opined that "they'll say what they have to" to "get [Carrodine] to say the right things so that they can close the case." Defense counsel appeared to attempt to dilute the impact of some aspects of the video by explaining these tactics and by telling the jury that he would have introduced the video to illustrate these tactics even if the prosecutor had not introduced it. Particularly in the face of this defense strategy, Carrodine's arguments on appeal do not convince us that counsel's decision not to object to Sergeant Besson's testimony was objectively unreasonable or deprived Carrodine of a substantial defense. Rather, counsel appeared to allow Sergeant Besson's testimony to highlight the circumstances of the interview. Moreover, given that Carrodine does not contest that he was the shooter, Sergeant Besson's assumptions about his culpability for the shooting, particularly alongside her testimony that she tried to elicit a statement about why he did it, does not appear to run appreciably afoul of Carrodine's argument that he acted in self-defense. For these reasons, we conclude that the record does not support Carrodine's claim of ineffective assistance.

*Carrodine*, 2006 WL 1751857 at *2-4 (headings and footnotes of case citations omitted).

The Michigan Court of Appeals conducted and comprehensive and thorough review of this claim and the resulting decision is neither contrary to *Strickland* nor an unreasonable application of federal law or the facts. First, Petitioner has failed to establish that counsel erred by not objecting to the disputed testimony. Counsel may have reasonably determined that Sergeant Besson's testimony recounting the interrogation was not wholly invalid. As explained by the Michigan Court of Appeals, Sergeant Besson did not mis-characterize the testimony and her testimony as a whole did not violate state law. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See, e.g., Lewis v. Jeffers*, 497 U.S.

10

764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Because the testimony was generally admissible under state law, any wholesale objection by trial counsel would likely have been denied.  Defense counsel cannot be deemed deficient for failing to make a futile objection or motion.  *See McQueen*, 99 F.3d at 1328.  Moreover, to the extent that portions of Sergeant Besson's testimony was subject to challenge, it was reasonable for trial counsel to contest such matters through cross-examination and argument.  In fact, the record reveals that counsel pointed out inconsistencies or inaccuracies in her testimony.  It was also part of counsel's strategy to use the video to critique the police interrogation tactics and to bolster Petitioner's self-defense claim.  Given the facts of the case, counsel's defensive tactics and conduct during the course of trial were reasonable.  The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

Second, Petitioner has failed to establish that he was prejudiced by counsel's conduct in this regard.  Much of Sergeant Besson's testimony recounting the interrogation and Petitioner's statement was relevant and admissible.  It is also undisputed that the videotaped interrogation and Petitioner's statement themselves were properly admitted at trial.  In the videotaped statement, Petitioner admitted shooting the victim.  The video was played at trial.  The jury was thus able to consider Petitioner's statements on their own and to evaluate Sergeant Besson's testimony in light of the video evidence.  Petitioner has failed to show that he was prejudiced by Sergeant Besson's testimony.  Furthermore, Petitioner's own admissions, combined with the victim's testimony, provided significant evidence of Petitioner's guilt at trial.  Petitioner has

thus failed to establish that counsel was ineffective under the *Strickland* standard.  He is

therefore not entitled to habeas relief on this claim.

Petitioner also asserts that counsel was ineffective for conceding Petitioner's guilt on the

carrying a concealed weapon charge.  During closing arguments, defense counsel acknowledged

that Petitioner admitted in his videotaped statement that he was carrying a gun and essentially

conceded that Petitioner was guilty of carrying a concealed weapon.  The Michigan Court of

Appeals denied relief on this claim, explaining:

> As a general rule, absent the defendant's consent, "a complete concession of
> defendant's guilt ... constitutes ineffective assistance of counsel." However, "[a]n
> attorney may well admit guilt of a lesser included offense in hopes that due to his
> candor the jury will convict of the lesser offense instead of the greater."
> Accordingly, we distinguish this case from those that Carrodine cites because
> those cases generally involve an attorney's admission of guilt to the sole or
> highest crime charged.
>
> Here, as Carrodine concedes on appeal, "[t]he central issue in this case was
> whether [he] specifically intended to kill Davis or was acting in self-defense."
> Accordingly, counsel argued that Carrodine acted in self-defense and was not
> guilty of assault with intent to murder or of any of the lesser assault charges. He
> stressed the prosecutor's burden to prove guilt beyond a reasonable doubt and
> contrasted the evidence that Carrodine had a gun with the lack of direct
> evidence, for instance, that he had any intent to kill. Counsel stated, for instance:
> "if you find him guilty of anything, it would have to [be] beyond a reasonable
> doubt, just like the CCW. It has to be beyond a reasonable doubt, not just
> maybe." Such an argument is not objectively unreasonable in light of the facts
> that Carrodine admitted that the shooter was carrying a gun and his theory of
> self-defense implicitly conceded that he was carrying a gun.

*Carrodine*, 2006 WL 1751857 at *5 (footnotes of case citations omitted).

This decision is neither contrary to *Strickland* nor an unreasonable application of federal

law or the facts.  Defense counsel may concede a defendant's guilt of lesser offenses in an effort

to avoid conviction on more serious charges without running afoul of the Sixth Amendment.

*See, e.g., Poindexter v. Mitchell*, 454 F.3d 564, 582 (6th Cir. 2006) (citing *Florida v. Nixon*, 543

12

U.S. 175, 189 (2004), and ruling that defense counsel was not ineffective for conceding that the petitioner was guilty of murder but arguing that he was not guilty of aggravated murder); *Smith v. Jones*, No. 2:03-CV-10230, 2007 WL 470548, *6-7 (E.D. Mich. Feb. 7, 2007) (counsel was not ineffective for conceding guilt on home invasion and robbery charges and contesting sexual assault charges).

In this case, trial counsel's concession of Petitioner's guilt of the lesser charged offense of carrying a concealed weapon was a reasonable trial strategy given the circumstances. Petitioner admitted that he was armed with a gun in his videotaped statement such that contesting the concealed weapon charge would have been difficult – and could have resulted in a loss of credibility in the eyes of the jury.  Petitioner's defense at trial was not that he did not commit the shooting, but rather that he shot the victim in self-defense.  Consequently, the focus of the defense was on the more serious assault charge and the intent necessary to sustain that charge.  Trial counsel may have thus reasonably decided not to contest the concealed weapon charge in order to lend more credence to the defense challenges to the assault charge. Counsel's strategy was logical and this Court will not second-guess that decision.  As noted *supra*, the fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective.  *See Moss*, 286 F.3d at 859.

Furthermore, Petitioner has not shown that he was prejudiced by trial counsel's conduct in this regard, *i.e.,* he has not shown that he had a valid or potentially successful defense to the concealed weapon charge.  Petitioner has thus failed to show that trial counsel erred or that he was prejudiced by counsel's conduct so as to satisfy the *Strickland* standard.  Habeas relief is not warranted on this claim.

## IV.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that...jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims.  *Id.* at 336-37.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims.  Accordingly, the Court **DENIES** a certificate of appealability.  The Court also **DENIES** Petitioner leave to proceed *in forma pauperis* on appeal because any appeal would be frivolous.  *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**

DATED:  January 13, 2010                    **s/Anna Diggs Taylor**
                                            ANNA DIGGS TAYLOR
                                            UNITED STATES DISTRICT JUDGE

---

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order of Dismissal was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 13, 2010.

James Carrodine, # 241113
Bellamy Creek Correctional Facility
1727 West Bluewater Highway
Ionia, MI 48846

                                            s/Johnetta M. Curry-Williams
                                            Case Manager

15